**BRADLEY GROMBACHER, LLPs**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Taylor L. Emerson, Esq. (SBN 225303)
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Telephone:     (805) 212-5124
Facsimile:      (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
temerson@bradleygrombacher.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LYNETTE GONZALEZ, MICHAELA FURDZOVA, LUCAS MARISCAL, STEPHANIE PORTER, SEATON COLLARD, JAMES COFFIN, LAWRENCE EBEL, PATRICK ROJAS, SYMONE SWEAZIE, SARAH COWART, KYMBERLY LOVETT, KIM MILLER, DAN SCALF, DAVID ULERY, RICKY WRIGHT, MICHAEL MILLER, CLAUDE VOGEL, ARLETA KORDYLEWSKA, BROOKE TOLAN, KEISHA WALTON, MICHELLE GROCHOWSKI, RAQUEL PEREZ, and SANDRA NICLAS individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH-ADE. LLC, a Delaware limited liability company<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR**<br>1. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200**, *et seq.*<br>2. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17500**, *et seq.*<br>3. *VIOLATION OF CALIFORNIA CIVIL CODE § 1750. et seq.*<br>4. **UNJUST ENRICHMENT**<br>5. **BREACH OF EXPRESS WARRANTY**<br>6. **BREACH OF IMPLIED WARRANTY**<br>7. **VIOLATION OF CONSUMER FRAUD LAWS**<br>8. **NEGLIGENT MISREPRESENTATION**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Lynette Gonzalez, Michaela Furdzova, Lucas Mariscal, Stephanie Porter, Seaton Collard, James Coffin, Lawrence Ebel, Patrick Rojas, Symone Sweazie, Sarah Cowart, Kymberly Lovett, Kim Miller, Dan Scalf, David Ulery, Ricky Wright, Michael Miller, Claude Vogel, Arleta Kordylewska, Brooke Tolan, Keisha Walton, Michelle Grochowski, Raquel Perez and Sandra Niclas ("Plaintiffs") allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief and the investigation by Plaintiffs' counsel which included, among other things, a review of public documents, marketing materials, and announcements made by Health-Ade LLC. ("Defendant" or "Health-Ade") as to all other matters. Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. The recent spike in popular awareness that not all bacteria are evil—and that many are good and beneficial for human health—has created a sort of fascination with live cultures and fermented products. This idea has brought the centuries-old drink, Kombucha, roaring into upper-middle class consciousness at upwards of $5 per bottle.

2. The recent spike in popular awareness that not all bacteria are evil—and that many are good and beneficial for human health—has created a sort of fascination with live cultures and fermented products. This idea has brought the centuries-old drink, Kombucha, roaring into upper-middle class consciousness at upwards of $5 per bottle.

3. As Defendant's website explains, "Kombucha is fermented tea that naturally contains probiotics and healthy organic acids. It is delicious, effervescent, and refreshing – low in sugar, caffeine and calories[1]."

4. Kombucha is generally derived from a sugar-sweetened tea (black or green) that has been mixed with yeast and bacteria and then given time to ferment. The microbes are together known as a SCOBY (symbiotic colony of bacteria and yeast). The result is an

effervescent, tart, and slightly sweet beverage. Depending on the added flavors, kombucha can taste fruity, floral, spicy, or herbaceous. It has a flavor profile similar to sparkling apple cider but with a more pronounced sour taste.

5. Due to the fermentation process involved in creating kombucha, the resultant beverage contains a large number of healthy bacteria known as probiotics. These bacteria line your digestive tract and have been touted for their purported ability to support the immune system, as they absorb nutrients and fight infection and illness.

6. Health-Ade manufactures, markets, distributes and sells kombucha beverage products to consumers in the United States. Health-Ade produces various flavors of kombuchas including but not limited to Ginger, Pink Lady Apple, Pomegranate, Cayenne Cleanse, Blood Orange-Carrot-Ginger, Maca-Berry, Power Greens, Beet, Reishi-Chocolate, Holiday Cheers, Sweet Thorn, California Grape and the "Original" ("Health-Ade Kombucha" of the "Product(s)").

7. Kombucha is considered to be a healthy beverage and Health-Ade advertises its kombucha beverages as such. As part of its efforts to portray the product as healthy, Defendant has falsely labeled its kombucha beverage products as fewer grams of sugar than the products actually contain.

8. When purchasing the Product, Plaintiffs relied on Defendant's misrepresentations regarding the sugar content of the Health-Ade kombucha beverages. Plaintiffs would not have purchased this product if they had known that Defendant's representations were false and misleading. Plaintiffs and the Classes paid a premium for Defendant's kombucha beverages over Kombucha beverages that did not contain as much sugar. Defendant's kombucha beverages are consistently more expensive per bottle than Kombucha beverage competitors, like GT Kombucha and Kevita Master Brew Kombucha. Plaintiffs would not have purchased Defendant's kombucha beverage had they known the truth. Plaintiffs suffered an injury by purchasing the Product at inflated prices. Plaintiffs also were

---

[1] https://health-ade.com/what-is-kombucha/?v=7516fd43adaa#kQetTmJF83yJpZv3.97 (last

1  harmed in that they did not receive the product they bargained for.

2       9.    Defendant's conduct of falsely marketing, advertising, labeling, and selling

3  Health-Ade kombucha as a healthy beverage and as having fewer grams of sugar than the

4  beverages actually contain constitutes unfair, unlawful, and fraudulent conduct; is likely to

5  deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially

6  injurious to consumers, because, among other things, it misrepresents the characteristics of

7  goods and services.

8       10.    Defendant's conduct of falsely marketing, advertising, labeling, and selling

9  Health-Ade kombucha as a healthy beverage and as having fewer grams of sugar than the

10  beverages actually contain constitutes unfair, unlawful, and fraudulent conduct; is likely to

11  deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially

12  injurious to consumers, because, among other things, it misrepresents the characteristics of

13  goods and services.

14       11.    As such, Plaintiffs seek relief in this action individually, and on behalf of all

15  purchasers of Health-Ade Kombucha Beverages, for Defendant's violations of the California

16  Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq., Unfair Competition

17  Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq., False Advertising Law ("FAL"), Bus. &

18  Prof. Code §§ 17500, et seq., for breach of express and implied warranties, negligent

19  misrepresentation, fraud, and unjust enrichment.

20  **JURISDICTION AND VENUE**

21       12.    The Court also has jurisdiction over this action pursuant to the Class Action

22  Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

23  citizenship from one Defendant, there are more than 100 Class members, and the aggregate

24  amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. The Court has

25  supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

26

27

28  viewed March 8, 2017.)

**Class Action Complaint**
**Case No.**

1   13.   The Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §
2   1965(b), (d). This Court has personal jurisdiction over the parties because Plaintiffs submit to
3   the jurisdiction of the Court and because Defendant systematically and continually conduct
4   business throughout the State of California, including marketing, advertising, and sales directed
5   to California residents.

6   14.   Defendant regularly conduct business in San Jose, because Plaintiff Furdzova
7   lives in San Jose, and because the conduct alleged herein which gives rise to the claims asserted
8   occurred within San Jose. Specifically, Plaintiff purchased the subject product at stores in Santa
9   Clara County.

10   15.   Defendants have distributed, marketed, advertised, labeled, and sold the Products
11   in this District. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in
12   this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1)
13   because Defendant is deemed to reside in this District and under 28 U.S.C. §1391(b)(2),
14   because Defendant conduct business in this District and a substantial part of the acts or
15   omissions giving rise to the claims set forth herein occurred in this District.

16   **INTRADISTRICT ASSIGNMENT (NORTHERN DISTRICT CIVIL LOCAL RULE 3-2)**

17   16.   This action is properly assigned to the San Jose Division of this District pursuant
18   to Northern District of California, Civil Local Rule 3-2 because a substantial part of the events
19   or omissions giving rise to Plaintiffs' claims arose in the counties of counties of Alameda,
20   Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo
21   or Sonoma. Defendant conducts substantial business in these counties served by this Division.
22   Defendant implemented its fraudulent marketing scheme (through e.g. marketing, advertising,
23   selling and/or leasing automobiles) in this district, as well as nationwide, through providers and
24   sales representatives who reside or transact business in this district, and thereby affecting Class
25   Members who similarly reside or transact business in this district. Additionally, multidistrict
26   litigation involving the similar claims of consumers who purchased the Product was assigned to
27   the San Jose Division of this district.

28

17.     Plaintiff Lynette Gonzalez ("Plaintiff Gonzalez"), is a citizen of California and an individual consumer. During the Class Period, Plaintiff Gonzalez purchased the Product at a grocery stores such as Sprouts Market in or around San Ysidro California. Plaintiff Gonzalez has purchased 2-3 bottles of Health-Ade kombucha per month since 2014.

18.     Prior to purchasing the Product, Plaintiff Gonzalez read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant. Plaintiff does not know if Defendant has remedied the issues resulting in the deceptive practices and thus considers purchasing additional Products. As such, Plaintiff Gonzalez still faces potential injury from Defendant's deceptive practices.

19.     Plaintiff Michaela Furdzova ("Plaintiff Furdzova") is a resident of San Jose California and an individual consumer. During the Class Period, Plaintiff Furdzova purchased the Product at a grocery stores in and around San Jose California. In the last year, Plaintiff Furdzova purchased the Product weekly for the last four years.

20.     Prior to purchasing the Product, Plaintiff Furdzova read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

21.     Plaintiff Lucas Mariscal ("Plaintiff Mariscal") is a resident of Vancouver, Washington and an individual consumer. During the Class Period, Plaintiff Mariscal purchased the Product at grocery/big box stores such as Target and Costco in the States of Washington and Oregon. Plaintiff Mariscal began drinking the product in or about 2016 and drank it almost daily.

22.     Prior to purchasing the Product, Plaintiff Mariscal read and relied upon false and

-6-

misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. Plaintiff Mariscal was particularly concerned about the sugar content of the products because he is working on weigh management. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

23. Plaintiff Stephanie Porter ("Plaintiff Porter") is a citizen of Oregon and an individual consumer. During the Class Period, Plaintiff Porter purchased the Product at grocery stores in or around Gladstone, Oregon. Plaintiff Porter is pre-diabetic and attempts to limit and control her sugar intake. She does this by carefully reviewing and relying on product labels and packaging. Plaintiff Porter began purchasing and consuming Health-Ade Products in 2003 and purchased approximately two beverages per week.

24. Prior to purchasing the Product, Plaintiff Porter read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

25. Plaintiff Seaton Collard ("Plaintiff Collard") is a citizen of Texas and an individual consumer. During the Class Period, Plaintiff Collard purchased the Product at grocery stores in or around Austin, Texas. Plaintiff Collard began purchasing and consuming Health-Ade Products 3-5 years ago.

26. Prior to purchasing the Product, Plaintiff Collard read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

27. Plaintiff James Coffin ("Plaintiff Coffin") is a citizen of New York and an individual consumer. During the Class Period, Plaintiff Coffin purchased the Product at a

-7-

grocery stores in or around Brooklyn, New York. In the last year, Plaintiff Coffin purchased and consumer Health-Ade Products 2-3 times per week. Plaintiff Coffin is a diabetic and attempts to limit and control his sugar intake. He does this by carefully reviewing and relying on product labels and packaging.

28. Prior to purchasing the Product, Plaintiff Coffin read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

29. Plaintiff Symone Sweazie ("Plaintiff Sweazie") is a citizen of New Jersey, and an individual consumer. During the Class Period, Plaintiff Sweazie purchased the Product at a grocery stores in or around Bridgeton, New Jersey. Plaintiff Sweazie typically drinks Health-Ade Products once per week.

30. Prior to purchasing the Product, Plaintiff Sweazie read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

31. Plaintiff Patrick Rojas ("Plaintiff Rojas") is a citizen of Florida and an individual consumer. During the Class Period, Plaintiff Rojas purchased the Product at a grocery stores in North Miami. Plaintiff Rojas generally drinks Health-Ade Products on a daily basis.

32. Prior to purchasing the Product, Plaintiff Rojas read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

33. Plaintiff Lawrence Ebel ("Plaintiff Ebel") is a citizen of Hawaii and an individual consumer. During the Class Period, Plaintiff Ebel purchased the Product at a

convenience stores in and around Wahiawa, Hawaii.  Plaintiff Ebel generally drinks Health-Ade Products weekly.

34.     Prior to purchasing the Product, Plaintiff Ebel read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging.  For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

35.     Plaintiff Sarah Cowart ("Plaintiff Cowart") is a citizen of Massachusetts and an individual consumer.  During the Class Period, Plaintiff Cowart purchased the Product at a grocery stores included Market Basket in or around Middleton, Massachusetts.  Plaintiff Cowart started purchasing Heath-Ade Products in October of 2017 and generally drinks the Products once per week.

36.     Prior to purchasing the Product, Plaintiff Cowart read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging.  For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

37.     Plaintiff Kymberly Lovett ("Plaintiff Lovett") is a citizen of Minnesota and an individual consumer.  During the Class Period, Plaintiff purchased the Product at a grocery stores in or around Minneapolis, Minnesota.   Between 2014 and 2015, Plaintiff Lovett drank Health-Ade Products daily.

38.     Prior to purchasing the Product Lovett, Plaintiff read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging.  For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

39.     Plaintiff Kim Miller ("Plaintiff Miller), is a citizen of Michigan and an individual consumer.  During the Class Period, Plaintiff Miller purchased the Product at a grocery stores

such as Whole Foods, Westborn Market and Trader Joes in and around Redford, Michigan. Since 2015 Plaintiff Miller has generally purchased and drank 2 Health-Ade Products per week.

40. Prior to purchasing the Product, Plaintiff Miller read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

41. Plaintiff Dan Scalf ("Plaintiff Scalf") is a citizen of Indiana. During the Class Period, Plaintiff Scalf purchased the Product at grocery stores such as Whole Foods or Georgetown Market in and around Indianapolis, Indiana. Since 2015, Plaintiff Scalf has generally purchased 1-2 bottles of the Health-Ade Product per week.

42. Prior to purchasing the Product, Plaintiff Scalf read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

43. Plaintiff David Ulery ("Plaintiff Ulery") is a citizen of Colorado. During the Class Period, Plaintiff Ulery purchased the Product once a few months prior to the filing of this action in Colorado Springs, Colorado.

44. Prior to purchasing the Product, Plaintiff Ulery read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

45. Plaintiff Ricky Wright ("Plaintiff Wright") is a citizen of Georgia. During the Class Period, Plaintiff Wright purchased the Product at grocery stores in and around Savannah, Georgia and in the State of Florida. Since around 2014 or 2015 through to the present, Plaintiff Wright purchased and consumed the Product a couple of times per week.

46. Prior to purchasing the Product, Plaintiff Wright read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

47. Plaintiff Michael Miller ("Plaintiff Miller"), is a citizen of Tennessee. During the Class Period, Plaintiff Miller purchased the Product at grocery stores such as Whole Foods in or around Nashville, Tennessee. Plaintiff Miller also purchased the product from Whole Foods in Alabama. Plaintiff Miller would typically purchase and consume 2-6 bottles per month.

48. Prior to purchasing the Product, Plaintiff Miller read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

49. Plaintiff Claude Vogel ("Plaintiff Vogel") is a citizen of Illinois. During the Class Period, Plaintiff Vogel purchased the Product at grocery stores such as Jewels in or around Chicago, Illinois. Plaintiff Vogel began drinking the Product in about March of 2015. Plaintiff Vogel purchased the Product 5-10 times.

50. Prior to purchasing the Product, Plaintiff Vogel read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, he understood that he was paying for a healthy beverage with a specific sugar content and was deceived when he received a product that included far more sugar than represented by Defendant.

51. Plaintiff Arleta Kordylewska ("Plaintiff Kordylewska") is a citizen of Connecticut. During the Class Period, Plaintiff Kordylewska purchased the Product at grocery stores such as Whole Foods in or around Windsor, Connecticut. Plaintiff Kordylewska would typically purchase the Products by the case.

52. Prior to purchasing the Product, Plaintiff Kordylewska read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

53. Brooke Tolan ("Plaintiff Tolan") is a citizen of Ohio. During the Class Period, Plaintiff Tolan purchased the Product at stores in or around Dayton, Ohio. Plaintiff Tolan began drinking the Product in 2017 and, on average, drank 2 bottles of the Product per day.

54. Prior to purchasing the Product, Plaintiff Tolan read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

55. Plaintiff Keisha Walton ("Plaintiff Walton") is a citizen of Maryland. During the Class Period, Plaintiff Walden purchased the Product at stores in the State of Maryland and in Washington, D.C. Plaintiff Walden started drinking the Product approximately six months ago and purchased and consumes the product three times per week.

56. Prior to purchasing the Product, Plaintiff Walton read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

57. Plaintiff Michelle Grochowski ("Plaintiff Grochowski") is currently a citizen of North Carolina, however, during the Class Period, Plaintiff Grochowski was also a citizen of Iowa. During the Class Period, Plaintiff Grochowski purchased the Product at stores in Iowa and North Carolina. Plaintiff Grochowski began purchasing and consuming the Product in 2017 and estimates that she typically purchases and consumes the Product 3-4 times per week.

58. Prior to purchasing the Product, Plaintiff Grochowski read and relied upon false

and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

59.     Plaintiff Raquel Perez ("Plaintiff Perez") is a citizen of New Hampshire. During the Class Period, Plaintiff Perez purchased the Product at grocery stores such as Whole Foods in or around Merrimack, New Hampshire. Plaintiff Perez began purchasing the Product about a year to a year and a half ago. Plaintiff Perez purchases and consumed approximately 3-12 bottles per month.

60.     Prior to purchasing the Product, Plaintiff Perez read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

61.     Plaintiff Sandra Niclas ("Plaintiff Niclas") is a citizen of New York. During the Class Period, Plaintiff Niclas purchased the Product at grocery stores in and around Montauk, New York. Plaintiff Niclas began purchasing the Product in 2014 or 2015. She purchases and consumes the Product 4 times per week.

62.     Prior to purchasing the Product, Plaintiff Niclas read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Products' packaging. For each purchase, she understood that she was paying for a healthy beverage with a specific sugar content and was deceived when she received a product that included far more sugar than represented by Defendant.

63.     Defendant Health-Ade LLC is a Delaware limited liability company. Its principal place of business is 3347 Motor Ave#200, Los Angeles, California 90034. According to Health-Ade LLC's website, the subject kombucha beverages are brewed "100% in Los Angeles, California." Health-Ade sells nine different flavors of kombucha ("Health-Ade Kombucha")

-13-

64.     The use of the term "defendants" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint.

65.     Plaintiff is informed and believes, and thereon alleges, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendants and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants. Plaintiff is informed and believes, and thereon alleges, that Defendants have, and always herein mentioned had, a joint economic and business interest, goal and purpose in the products that are the subject of this lawsuit.

## ALLEGATIONS OF FACT

### A.     HISTORY OF KOMBUCHA

66.     Although the origins are a bit murky, it is believed that Kombucha originated in Northeast China (historically referred to as Manchuria) around 220 B.C.[2]. Since Kombucha has been prized for its healing properties[3].

67.     The word "kombucha" is likewise of uncertain etymology. The American Heritage Dictionary suggests that it is probably from the "Japanese kombucha, tea made from kombu (the Japanese word for kelp perhaps being used by English speakers to designate fermented tea due to confusion or because the thick gelatinous film produced by the kombucha culture was thought to resemble seaweed)." Other sources report that the name "kombucha" is derived from Dr. Kombu, a Korean physician who brought the fermented tea to Japan as a curative for Emperor Inkyo, although others attribute it to the

68.     According to a Russian fable, the original kombucha culture originated from an ant. As the story goes, a monk with healing powers was summoned to help an ailing emperor.

---

[2] https://www.forbes.com/sites/christinatroitino/2017/02/01/kombucha-101-demystifying-the-past-present-and-future-of-the-fermented-tea-drink/#1ece08fa4ae2
[3] https://www.forbes.com/sites/christinatroitino/2017/02/01/kombucha-101-demystifying-the-past-present-and-future-of-the-fermented-tea-drink/#1ece08fa4ae2

The monk promises to treat the emperor's sickness with an ant, and then drops it in the emperor's tea, advising him to wait for the jellyfish to grow and transform the tea to a healing portion before drinking. The emperor followed the monks advise and was healed.

69. An alternative theory of origin was put forth by Bachinskaya, the Russian scientist who first studied kombucha at the turn of the century. Bachinskaya based her origin theory on the fact that fruit flies can turn a batch of wine or beer to vinegar simply by landing on it. When acetobacter bacteria that live on the flies' legs are transferred to the liquid they quickly begin multiplying and converting the sugars to acetic acid.

70. Regardless of how the culture originated, the kombucha was eventually brought to Europe because of trade route expansions in the early 20th century, most notably appearing in Russia (as "Kambucha") and Germany (as "Kombuchaschwamm"). Despite a dip in international popularity during WWII due to the shortage of tea and sugar supplies, kombucha regained popularity following a 1960s study in Switzerland comparing its health benefits to those of yogurt[4]. The beverage enjoyed a resurgence of popularity in the United States in the 1990's.

**B.    RISE IN CONTEMPORARY CONSUMER INTEREST IN KOMBUCHA**

71. In the last decade, United States consumers have developed an insatiable thirst for kombucha beverages.

72. Kombucha has the fastest-growing segment of the "functional beverage" market in the U.S.—a category vaguely defined by one industry publication as "drinks with added functionality, such as ingredients and associated health benefits and functional positioning.[5]"

73. 57% of consumers in a recent study aged 25-34 demonstrated engagement in all segments within the functional beverage category from sports to weight loss to meal replacement.[6]

74. Such demand has catapulted the fringe kombucha market into a multimillion dollar industry. The kombucha business has grown up, turning into an industry that could reach

---

[4]    https://www.forbes.com/sites/christinatroitino/2017/02/01/kombucha-101-demystifying-the-past-present-and-future-of-the-fermented-tea-drink/#43bc7c914ae2
[5] https://www.theatlantic.com/health/archive/2016/12/the-promises-of-kombucha/509786/
[6] https://www.fona.com/resource-center/blog/millennials-functional-beverages

$656.7 million in U.S. sales by 2019, according to research firm Euromonitor International[7].

75.     Sales of ready-to-drink carbonated tea, which includes many kombucha brands, jumped from $127.8 million in 2009 to $529.1 million in 2014, according to Euromonitor.

76.     "It fits right into that health and wellness trend," said Duane Stanford, editor of Beverage Digest, a trade publication for the U.S. nonalcoholic beverage industry. "People are looking for healthier beverages, they're looking at ingredients and because there's a segment of consumers that are really interested in that, kombucha just kind of becomes one of those niche products that is able to get a following."

77.     Kombucha is the symbiosis of a number of bacteria and special yeast cultures. In simple terms, kombucha starts out as a sugary tea, which is then fermented with the help of a SCOBY.



78.     "SCOBY" is an acronym for "symbiotic culture of bacteria and yeast." It is a zoogleal mat—that is, a mass of bacteria and yeast tied together with cellulose nanofibers.  The most visible aspect of the SCOBY, also called the "mother", is an off-white or brownish mat that looks like a slimy Frisbee or a calamari steak.

79.     The SCOBY mat floats on top of a fermenting batch of kombucha.  The growth

---

[7] http://www.latimes.com/business/la-fi-kombucha-makers-20160102-story.html

of the mat regulates the liquid's access to oxygen.

80.     The primary bacteria in a SCOBY is *komatagaeibacter xylinum* (aka *Acetobacterxylinum*), although there could be other strains.  In addition to building the SCOBY, the bacteria are responsible for converting the ethanol produced by the yeast into healthy acids.

81.     In a mutually beneficial cycle, the ethanol produced by the yeast in the SCOBY becomes food for the bacteria which converts the ethanol to acetic acid.



82.     At room temperature, the yeast and bacteria feed on the sugar in the tea and ferment it.  It's a similar process to making wine, and a small amount of alcohol is produced in the fermentation process. Vinegar and carbonation are also produced, which give kombucha its distinct sour flavor and effervescence.

**C.   THE PURPORTED BENEFITS OF KOMBUCHA**

83.     As far back as 460-370 B.C., Hippocrates is attributed with the saying "all disease begins in the gut."  Thousands of years later, health-conscious consumers are guzzling Kombucha in an effort to increase gastrointestinal health and overall well-being.  Kombucha has become the "apple-a-day" of millennials.

84.     "The probiotic content [of kombucha] is certainly a component to appreciate," says Caroline Cederquist, MD, founder of BistroMD. "[Prebiotics] and probiotics consistently demonstrate improvements in digestive health with evidence supporting its use in treating

diarrhea and irritable bowel syndrome and fighting against intestinal infections.[8]"

85.     According to the National Institute of Diabetes and Digestive and Kidney Diseases, upward of 60 million to 70 million Americans are affected by digestive diseases. In addition, digestive disease and disorders cost the U.S. over $100 billion per year."

86.     Since 80 percent of your immune system is located in your gut, and the digestive system is the second largest part of your neurological system, it's no surprise that the gut is considered the "second brain."

87.     Probiotics are bacteria that line your digestive tract and support your body's ability to absorb nutrients and fight infection. There are actually 10 times more probiotics in your gut than cells in your body.

88.     Due to the fermentation process involved in creating kombucha, the resultant beverage contains a large number these probiotics.

D.     **HEALTH-ADE**

89.     Health-Ade is one of the nation's largest manufacturers of kombucha. Health-Ade produces the following kombucha beverages:

- Original
- Pink Lady Apple
- Cayenne Cleanse
- Beet
- Ginger-Lemon
- Plum
- Carrot
- California Grape
- Pomegranate

90.     The nutrition panels of Health-Ade Kombuchas claim that the beverages contain between two and four grams of sugar per eight ounces serving of eight fluid ounces. Given that the information appears on the products' label, all consumers are exposed to the same message.

---

[8] https://www.wellandgood.com/good-food/how-to-read-a-kombucha-label/

91. Testing has consistently demonstrated that the health-Ade Kombucha beverages actually each contain between 11 and 13 grams of sugars per serving. This translates to between four and six times more sugar than is stated on the products' label.

92. Said differently, each bottle of Health-Ade has roughly the same grams of sugar as:



2 Ring Pops (the ring pops have less)



Approximately 5 ¾ teaspoons sugar



A little more than ½ a Sprinkles cupcake



2 and 1/3 Krispy Kreme doughnuts

93.     American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

94.     The sugar content is material to a reasonable consumer and is particularly material to the health-conscious consumers to whom Defendant markets the Health-Ade Kombuchas.

95.     Indeed, a consistent theme throughout Defendant's uniform advertising and marketing campaign are the touted health benefits – particularly the benefits of the probiotics and acids on digestive and overall health.  Indeed, Defendant's motto is "FOLLOW YOUR GUT".  Yet, Defendant knows that sugar has been linked to the overgrowth of bad bacteria and Candida in the intestinal tract.  Imbalances in digestive flora have been linked to disease such as arthritis and autoimmune disease.

96.     Defendant Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food and beverage labeling claims especially at the point of sale. Consumers would not know the true nature and quantity of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry as well as internal manufacturing habits beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as Defendant to honestly report the nature and quantity of a beverage's ingredients, and beverage companies such as Defendant intends and knows that consumers rely upon food labeling

-20-

statements in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on its products under federal law.

97. Defendant's systematic mislabeling of the sugar content of Health-Ade kombuchas is deceptive, fraudulent, unfair in violation of California's consumer laws.

98. During the Class Period, Plaintiffs were introduced to the Product through its labeling and advertising. Plaintiffs, like other reasonable consumers, cares about their sugar intake and would not have purchased the Health-Ade Kombuchas and/or would not have paid a premium price for the products had they known they actually contained more sugar than what was disclosed on the nutritional panel.

99. Defendant unscrupulously capitalize on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing Health-Ade.

## DAMAGES TO PLAINTIFFS AND THE CLASSES

100. Plaintiffs purchased the Product based on Defendant's labeling, advertising, and marketing that the Product was unpasteurized.

101. Defendant manufactured, distributed, and sold products that are misbranded. Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

102. Moreover, Plaintiffs and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

103. As set forth in the chart below, the Product costs more than comparable products that do not contain comparably high sugar levels.

| Product | Price per bottle | Premium paid per bottle versus … |
|---------|------------------|----------------------------------|
| Health-Ade | $3.99 | |
| KeVita | $2.99 | $1.00 |
| SUJA | $3.29 | $.70 |

## TOLLING OF THE STATUTE OF LIMITATIONS,
## FRAUDULENT CONCEALMENT, EQUITABLE TOLLING,
## AND CONTINUING VIOLATIONS

104. Plaintiffs did not discover and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

105. Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

106. Because of the self-concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiffs and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

107. Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendant's unlawful conduct. Therefore, Plaintiffs and the Classes submit that each instance that Defendant engaged in the conduct complained of herein and each instance that a member of any Class purchased Health-Ade Kombuchas constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

108. Defendant is estopped from relying on any statute of limitations defense because of its unfair or deceptive conduct.

109. Defendant's conduct was and is, by its nature, self-concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding its illegal conduct, and actively have foreclosed Plaintiffs and the Classes from learning of its illegal, unfair, and/or deceptive acts. These affirmative acts included mislabeling the products by significantly undervaluing the sugar content of the beverages.

110. By reason of the foregoing, the claims of Plaintiffs and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

111.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated.  The Classes which Plaintiffs seek to represent comprise:

### California Class

All persons in California who purchased Health-Ade Kombuchas from March 23, 2014 until the date of judgment in this action for personal or household use, and not for resale or distribution purposes.  Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant ("California Class").   Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

### National Class

All persons in the United States who purchased Health-Ade Kombuchas from March 23, 2014, until the date of judgment in this action for personal or household use, and not for resale or distribution purposes.  Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant ("National Class").  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

### Consumer Protection Class

All persons who reside in states in the United States with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased Health-Ade Kombuchas from March 23, 2014, until the date of judgment in this action, for personal or household use, and not for resale or distribution purposes ("Consumer Protection Class").  Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant.   Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

-23-

112.    The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

113.    There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), whether Defendant's labels and packaging include uniform misrepresentations and omissions that misled Plaintiffs and the other members of the Classes to believe the Product was healthier and contained less sugar than actually the case.  The members of each Class were and are similarly affected by having purchased the Product for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiffs and other members of the Classes.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

114.    Plaintiffs assert claims that are typical of the claims of each respective Classes for purposes of Rule 23(a)(3).  Plaintiffs and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which contains vastly more grams of sugar than represented on the products' label.  Plaintiffs paid a premium for the Heath-Ade Kombuchas, on the belief the products contained between two and four grams of sugar per serving, over similar alternatives that did not make such representations.  Plaintiffs and the members of each Class have thus all overpaid for the Product.

115.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4).  Plaintiffs have no interests antagonistic to those of other members of each respective Class.  Plaintiffs are committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

116. Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole. Defendant utilizes an integrated, nationwide messaging campaign that includes uniform misrepresentations that misled Plaintiffs and the other members of each Class.

117. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class. Among these common questions of law and fact are:

    a. whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Health-Ade Kombuchas;

    b. whether Defendant's labeling of the Health-Ade Kombuchas are likely to deceive the members of each Class;

    c. whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

    d. whether Defendant represented that the Health-Ade Kombuchas have characteristics, benefits, uses, or qualities that it does not have;

    e. whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Health-Ade Kombuchas violated the laws alleged herein;

    f. whether Plaintiffs and members of the Classes are entitled to injunctive and other equitable relief; and

    g. whether Defendant was unjustly enriched by its conduct.

118. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

119. The injuries sustained by Plaintiffs and the members of each Class flow, in each

1  instance, from a common nucleus of operative facts – Defendant's misconduct.

2      120.    Plaintiffs and the members of each Class have been damaged by Defendant's

3  misconduct.  The members of each Class have paid for a product that would not have been

4  purchased in the absence of Defendant's deceptive scheme, or, alternatively, would have been

5  purchased at a lesser price.

6      121.    Proceeding as a class action provides substantial benefits to both the parties and

7  the Court because this is the most efficient method for the fair and efficient adjudication of the

8  controversy.  Members of each Class have suffered and will suffer irreparable harm and

9  damages as a result of Defendant's wrongful conduct.  Because of the nature of the individual

10  claims of the members of each Class, few, if any, could or would otherwise afford to seek legal

11  redress against Defendant for the wrongs complained of herein, and a representative class action

12  is therefore the appropriate, superior method of proceeding and essential to the interests of

13  justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a

14  representative class action, members of each Class would continue to suffer losses for which

15  they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten

16  gains.  Even if separate actions could be brought by individual members of each Class, the

17  resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the

18  Court and the litigants, as well as create a risk of inconsistent rulings, which might be

19  dispositive of the interests of the other members of each Class who are not parties to the

   adjudications and/or may substantially impede their ability to protect their interests.

20  **FIRST CAUSE OF ACTION**

21  **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS &**

22  **PROFESSIONS CODE § 17200,** *et seq.*

23  **(By Plaintiffs and California Class against all Defendant)**

24      122.    Plaintiffs repeat and reallege the allegations set forth above, and incorporate the

25  same as if set forth herein at length.

26      123.    This cause of action is brought pursuant to *Business and Professions Code* §

27  17200, *et seq.*

28

-26-

124. In the advertising of the Product, Defendant makes false and misleading statements. Specifically, as set forth above, Defendant labels its Health-Ade Kombucha products as having between two and four grams of sugar per eight ounces serving.

125. In fact, the Health-Ade Kombuchas contain a far greater sugar content per serving.

126. Defendant is aware that the claims that it makes about the Health-Ade Kombucha are false, misleading and unsubstantiated.

127. As alleged in the preceding paragraphs, the misrepresentations and omissions by Defendant of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

128. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

129. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

130. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

131. Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiffs and the members of the Classes seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Health-Ade Kombucha. Likewise, Plaintiffs and the members of the Classes seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

**Class Action Complaint**
**Case No.**

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

**(By Plaintiffs and California Class against all Defendant)**

132.  Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

133.  This cause of action is brought pursuant to *Business and Professions Code* § 17500, *et seq.* (known as California's False Advertising Law or "FAL").

134.  The FAL prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading.  Cal. Bus. & Prof. Code §17500.

135.  In its advertising of Health-Ade Kombucha, Defendant makes false and misleading statements. Specifically, as set forth above, Defendant labels its product as having a sugar content of between two and four grams of sugar per serving.

136.  In fact, the Health-Ade Kombuchas contain between 11 and 13 grams of sugar per serving.

137.  As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

138.  In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

139.  Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiffs and the members of the Classes seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Health-Ade

1  Kombuchas. Likewise, Plaintiffs and the members of the Classes seek an order requiring
2  Defendant to disclose such misrepresentations, and additionally request an order awarding
3  Plaintiffs restitution of the money wrongfully acquired by Defendant by means of responsibility
4  attached to Defendant's failure to disclose the existence and significance of said
5  misrepresentations.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.***

**(By Plaintiffs and California Class against all Defendant)**

140.  Plaintiffs repeat and reallege all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

141.  This cause of action is brought pursuant to *Civil Code* § 1750, *et seq.*, the Consumers Legal Remedies Act.

142.  Plaintiffs, as well as each member of the Consumer Class, constitutes a "consumer" within the meaning of California *Civil Code* § 1761(d).

143.  Defendant's sales of Health-Ade kombuchas constitutes "transactions" within the meaning of California *Civil Code* § 1761(e).

144.  The Health-Ade Kombucha beverages purchased by Plaintiffs and the Consumer Class constitute "goods" under California *Civil Code* § 1761(a).

145.  The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

146.  There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

(a)  Whether Defendant represented that Health-Ade Kombucha has characteristics, ingredients, benefits, uses or quantities which it does not have;

(b)  Whether the existence, extent and significance of the major misrepresentations, concealments and omissions regarding the purported benefits, characteristics and efficacy of the Health-Ade Kombucha violate the Act; and

-29-

(c) Whether Defendant knew of the existence of these misrepresentations, concealments and omissions.

147. The policies, acts, and practices heretofore described were intended to result in the sale of Health-Ade Kombucha to the consuming public and violated and continue to violate: (1) Section 1770(a)(5) of the Act which prohibits, *inter alia,* "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" (2) Section 1770(a)(7) of the Act, which prohibits, "[r]epresenting that goods or services are of a particular standard, quality, grade, or that goods are of a particular style or model , if they are of another;" (3) Section 1770(a)(9), which prohibits, '[a]dvertising goods or services with intent not to sell them as advertised;" and section 1770(a)(14) which bars KeVita from "representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve."

148. Defendant fraudulently deceived Plaintiffs and the Classes by representing that Product has certain characteristics, benefits, uses and qualities which it does not have. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Classes, specifically and not limited to the sugar content of the Health-Ade Kombucha beverages. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Classes and depriving them of their legal rights and money.

149. Defendant's actions as described hereinabove were done with conscious disregard of Plaintiffs' rights and Defendant was wanton and malicious in its concealment of the same.

150. Pursuant to § 1780(a) of the Act, Plaintiffs seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant including, but not limited to, an order enjoining Defendant from distributing such false advertising and misrepresentations. Plaintiffs shall be irreparably harmed if such an order is not granted.

151. Plaintiffs reserve the right to amend this complaint to include a request for damages under the CLRA after complying with *Civil Code* 1782(a) within thirty days after the commencement of this action.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (By Plaintiffs, California Class and National Class

### Against all Defendant)

152.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

153.    Plaintiffs brings this claim individually, as well as, on behalf of members of the National Class and California Class pursuant California law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

154.    In the alternative, Plaintiffs bring this claim individually as well as on behalf of the California Class.

155.    At all times relevant hereto, Defendant deceptively labeled, marketed, advertised, and sold Health-Ade Kombucha to Plaintiffs and the Classes.

156.    Plaintiffs and members of the Classes conferred upon Defendant non-gratuitous payments for Health-Ade Kombucha that they would not have due to Defendant's deceptive labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

157.    Defendant has been unjustly enriched in retaining the revenues derived from

-31-

purchases of Health-Ade Kombucha by Plaintiffs and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the quantity of sugar in the beverages, which caused injuries to Plaintiffs and members of the Classes because they paid a price premium due to the mislabeling of the Health-Ade Kombucha.

158. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

### FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (By Plaintiffs, on behalf of themselves, the California Class and
### Consumer Protection Class Against all Defendant)

159. Plaintiffs repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

160. Plaintiffs bring this Count individually under the laws of the state where they purchased Health-Ade Kombucha and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding express warranties).

161. Defendant's representations, as described herein, are affirmations by Defendant that Health-Ade Kombucha beverages contained only between two and four grams of sugar per serving. Defendant's representations regarding Health-Ade Kombucha are made to Plaintiffs and the other members of the Classes at the point of purchase and are part of the description of the goods. Those promises constituted express warranties and became part of the basis of the bargain, between Defendant on the one hand, and Plaintiffs and the Classes on the other.

162. In addition, or in the alternative, Defendant made each of its above-described representations to induce Plaintiffs and the Classes to rely on such representations, and they each did so rely on Defendant's representations as a material factor in its decisions to purchase Health-Ade Kombucha. Plaintiffs and other members of the Classes would not have

purchased Health-Ade Kombucha but for these representations and warranties.

163. The Health-Ade Kombucha did not, in fact, meet the representations Defendant made about Product, as described herein, because Health-Ade Kombucha contains sugar contents far in excess of the amount Defendant warranted.

164. At all times relevant to this action, Defendant made false representations in breach of the express warranties and in violation of state express warranty laws, including:

     a. Alaska St. §45.02.313;

     b. Ariz. Rev. Stat. Ann. §47-2313;

     c. Ark. Code Ann. §4-2-313;

     d. Cal. Com. Code §2313;

     e. Colo. Rev. Stat. §4-2-313;

     f. Conn. Gen. Stat. Ann. §42a-2-313;

     g. D.C. Code §28:2-313;

     h. Fla. Stat. §672.313;

     i. Haw. Rev. Stat. §490:2-313;

     j. 810 Ill. Comp. Stat. 5/2-313;

     k. Ind. Code §26-1-2-313;

     l. Kan. Stat. Ann. §84-2-313;

     m. La. Civ. Code. Ann. art. 2520;

     n. Maine Rev. Stat. Ann. 11 §2-313;

     o. Mass. Gen. Laws Ann. 106 §2-313;

     p. Minn. Stat. Ann. §336.2-313;

     q. Miss. Code Ann. §75-2-313;

     r. Mo. Rev. Stat. §400.2-313;

     s. Mont. Code Ann. §30-2-313;

     t. Neb. Rev. Stat. §2-313;

     u. Nev. Rev. Stat. §104.2313;

     v. N.H. Rev. Stat. Ann. §382-A:2-313;

1        w.  N.J. Stat. Ann. §12A:2-313;

2        x.  N.M. Stat. Ann. §55-2-313;

3        y.  N.Y. U.C.C. Law §2-313;

4        z.  N.C. Gen. Stat. Ann. §25-2-313;

5        aa. Okla. Stat. Ann. tit. 12A, §2-313;

6        bb. Or. Rev. Stat. §72.3130;

7        cc. Pa. Stat. Ann. tit. 13, §2313;

8        dd. R.I. Gen. Laws §6A-2-313;

9        ee. S.C. Code Ann. §36-2-313;

10       ff.  S.D. Codified Laws. §57A-2-313;

11       gg. Tenn. Code Ann. §47-2-313;

12       hh. Tex. Bus. & Com. Code Ann. §2.313;

13       ii.  Utah Code Ann. §70A-2-313;

14       jj.  Vt. Stat. Ann. tit. 9A§2-313;

15       kk. Wash. Rev. Code §62A.2-313;

16       ll.  W. Va. Code §46-2-313;

17       mm.  Wyo. Stat. Ann. §34.1-2-313;

18   165.  The above statutes do not require privity of contract in order to recover for

19   breach of express warranty.

20   166.  As a proximate result of this breach of warranty by Defendant, Plaintiffs and

21   other members of the Classes have been damaged in an amount to be determined at trial

22   because: (a) they paid a price premium due to the deceptive labeling of Health-Ade

23   Kombucha; and (b) Health-Ade Kombucha did not have the composition, attributes,

24   characteristics, nutritional value, health qualities, or value promised.

25   167.  Wherefore, Plaintiffs and the Classes demand judgment against Defendant for

26   compensatory damages, plus interest, costs, and such additional relief as the Court may deem

27   appropriate or to which Plaintiffs and the Classes may be entitled.

28

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

**(By Plaintiffs, on Behalf of Themselves, the California Class, the California Class and**

**Consumer Protection Class Against Defendant)**

168.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

169.     Plaintiffs bring this Count individually under the laws of the state where they purchased Health-Ade Kombucha and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding implied warranties).

170.     The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

171.     The Uniform Commercial Code §2-314 provides that "[g]oods to be merchantable must be at least such as.... Are adequately contained, packaged, and labeled as the agreement may require...[and] conform to the promises or affirmations of fact made on the container or label if any." Cal.Com.Code § 2314(2)(f).

172.     Defendant developed, manufactured, advertised, marketed, sold, and/or distributed Health-Ade Kombucha and represented that Health-Ade Kombucha had a sugar content below the actual sugar content of the beverages.

173.     At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

     a.   Ala. Code §7-2-314;

     b.   Alaska Stat. §45.02.314;

     c.   Ariz. Rev. Stat. Ann. §47-2314;

     d.   Ark. Code Ann. §4-2-314;

| | | |
|---|---|---|
| 1 | e. | Cal. Com. Code §2314; |
| 2 | f. | Colo. Rev. Stat. §4-2-314; |
| 3 | g. | Conn. Gen. Stat. Ann. §42a-2-314; |
| 4 | h. | Del. Code Ann. tit. 6 §2-314; |
| 5 | i. | D.C. Code §28:2-314; |
| 6 | j. | Fla. Stat. §672.314; |
| 7 | k. | Ga. Code Ann. §11-2-314; |
| 8 | l. | Haw. Rev. Stat. §490:2-314; |
| 9 | m. | Idaho Code §28-2-314; |
| 10 | n. | 810 Ill. Comp. Stat. Ann. 5/2-314; |
| 11 | o. | Ind. Code Ann. §26-1-2-314; |
| 12 | p. | Iowa Code Ann. §554.2314; |
| 13 | q. | Kan. Stat. Ann. §84-2-314; |
| 14 | r. | Ky. Rev. Stat. Ann. §355.2-314; |
| 15 | s. | La. Civ. Code Ann. art. §2520; |
| 16 | t. | Me. Rev. Stat. Ann. 11 §2-314; |
| 17 | u. | Md. Code Ann. Com. Law §2-314; |
| 18 | v. | Mass. Gen. Laws Ch. 106 §2-314; |
| 19 | w. | Mich. Comp. Laws Ann. §440.2314; |
| 20 | x. | Minn. Stat. Ann. §336.2-314; |
| 21 | y. | Miss. Code Ann. §75-2-314; |
| 22 | z. | Mo. Rev. Stat. §400.2-314; |
| 23 | aa. | Mont. Code Ann. §30-2-314; |
| 24 | bb. | Nev. Rev. Stat. §104.2314; |
| 25 | cc. | N.H. Rev. Stat. Ann. §382-A:2-314; |
| 26 | dd. | N.J. Stat. Ann. §12A:2-314; |
| 27 | ee. | N.M. Stat. Ann. §55-2-314; |
| 28 | ff. | N.Y. U.C.C. Law §2-314; |

gg. N.C. Gen. Stat. Ann. §25-2-314;

hh. N.D. Cent. Code §41-02-314;

ii. Ohio Rev. Code Ann. §1302.27;

jj. Okla. Stat. Ann. tit. 12A §2-314;

kk. Or. Rev. Stat. §72.3140;

ll. Pa. Stat. Ann. tit. 13 §2314;

mm.      R.I. Gen. Laws §6A-2-314;

nn. S.C. Code Ann. §36-2-314;

oo. S.D. Codified Laws §57A-2-314;

pp. Tenn. Code Ann. §47-2-314;

qq. Tex. Bus. & Com. Code Ann. §2-314;

rr. Utah Code Ann. §70A-2-314;

ss. Va. Code Ann. §8.2-314;

tt. Vt. Stat. Ann. tit. 9A §2-314;

uu. W. Va. Code §46-2-314;

vv. Wash. Rev. Code §62A 2-314;

ww.      Wis. Stat. Ann. §402.314; and

xx. Wyo. Stat. Ann. §34.1-2-314.

174.    As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of beverage products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

175.    Further, Defendant is a merchant with respect to Health-Ade Kombucha. Defendant developed, manufactured, produced, advertised, marketed, sold, and/or distributed Health-Ade Kombucha and represented to Plaintiffs and the Classes that the beverages had between 2 and 4 grams of sugar per serving, as described herein.  Further, Defendant, by selling Health-Ade Kombucha to Plaintiffs and the Classes, have held themselves out as retailers of Health-Ade Kombucha and, in fact, have derived a substantial amount of revenues from the sale of Health-Ade Kombucha.

176. Health-Ade Kombucha can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

177. As a merchant of Health-Ade Kombucha, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a kombucha beverage, as promised.

178. Defendant developed, manufactured, produced, sold, and distributed Health-Ade Kombucha to consumers such as Plaintiffs and the Classes. They knew that the Product would be used as a kombucha beverage, as promised.

179. Defendant specifically represented in its labeling of Health-Ade Kombucha that the beverages contained between 2 and 4 grams of sugar per serving.

180. Defendant breached its implied warranties in connection with the sale of Health-Ade Kombucha to Plaintiffs and members of the Classes. Health-Ade Kombuchas are neither adequately labeled nor conform to the promises or affirmations of at made on the container or label.

181. Defendant had actual knowledge that Health-Ade Kombucha contained sugar levels far in excess of its warranties and thus was the low sugar beverage marketed and not fit for its ordinary purpose and Plaintiffs therefore were not required to notify Defendant of its breach. If notice is required, Plaintiffs and the Classes adequately have provided Defendant of such notice through the filing of this lawsuit.

182. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and other members of the Classes have been injured. Plaintiffs and the other members of the Classes would not have purchased Health-Ade Kombucha but for Defendant's representations and warranties. Defendant misrepresented the character of Health-Ade Kombucha, which caused injuries to Plaintiffs and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiffs and the other members of the Classes.

Class Action Complaint
Case No.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF CONSUMER FRAUD LAWS

## (By Plaintiffs, on Behalf of Themselves, the California Class, and Consumer Protection Class against all Defendants)

183. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

184. Plaintiffs bring this Count individually under the laws of the state where they purchased Health-Ade Kombucha and on behalf of all other persons who purchased Health-Ade Kombucha in states having similar laws regarding consumer fraud and deceptive trade practices.

185. Plaintiffs and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased the Product.

186. The consumer protection laws of the State in which Plaintiffs and the other members of the Classes purchased Health-Ade Kombucha declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

187. Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

    a. Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

    b. Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

    c. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

    d. California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

    e. Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

    f. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.  Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.  Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.  California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.  Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.  Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.  Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.  Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann.

§30-14-101 *et seq.*;

 x. Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

 y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

 z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1 *et seq.*;

 aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

 bb. New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

 cc. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

 dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

 ee. Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

 ff. Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

 gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

 hh. Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

 ii. South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

 jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

 kk. Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

 ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

 mm. Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

 nn. West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

 oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

 188. Health-Ade Kombucha constitutes a product to which these consumer protection laws apply.

 189. In the conduct of trade or commerce regarding its production, marketing, and

1  sale of Health-Ade Kombucha, Defendant engaged in one or more unfair or deceptive acts or

2  practices including, but not limited to, uniformly representing to Plaintiffs and each member of

3  the Classes by means of its packaging and labeling of Health-Ade Kombucha that the

4  beverages contained between 2 and 4 grams of sugar when, in fact they contained between 11

5  and 13 grams, as described herein.

6     190.    Defendant's representations and omissions were false, untrue, misleading,

7  deceptive, and/or likely to deceive.

8     191.    Defendant knew, or should have known, that its representations and omissions

9  were false, untrue, misleading, deceptive, and/or likely to deceive.

10    192.    Defendant used or employed such deceptive and unlawful acts or practices with

11  the intent that Plaintiffs and members of the Classes rely thereon.

12    193.    Plaintiffs and the other members of the Classes did so rely.

13    194.    Plaintiffs and the other members of the Classes purchased Health-Ade

14  Kombucha produced by Defendant which misrepresented the characteristics and nature of

15  Health-Ade Kombucha.

16    195.    Plaintiffs and the other members of the Classes would not have purchased

17  Health-Ade Kombucha but for Defendant's deceptive and unlawful acts.

18    196.    As a result of Defendant's conduct, Plaintiffs and the other members of the

19  Classes sustained damages in amounts to be proven at trial.

20    197.    Defendant's conduct showed complete indifference to, or conscious disregard

21  for, the rights and safety of others such that an award of punitive and/or statutory damages is

22  appropriate under the consumer protection laws of those states that permit such damages to be

23  sought and recovered.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(By Plaintiffs, on Behalf of Themselves, and the California Class against all Defendant)**

27    198.    Plaintiffs repeat and reallege the allegations set forth in the preceding

28  paragraphs, and incorporates the same as if set forth herein at length.

-42-

1    199.    In making representations of fact to Plaintiffs and the California Class members
2    about Health-Ade Kombucha, Defendant failed to fulfill its duty to disclose the material facts
3    alleged above.    Such failure to disclose on the part of Defendant amounts to negligent
4    misrepresentation.

5    200.    Plaintiffs and the other members of the California Class reasonably relied upon
6    such representations and omissions to their detriment.

7    201.    Plaintiffs and the other members of the California Class, as a direct and
8    proximate cause of Defendant's negligent misrepresentations, reasonably relied upon such
9    misrepresentations to their detriment.    By reason thereof, Plaintiffs and the other Class
10   members have suffered damages in an amount to be proven at trial.

11                                   **PRAYER FOR RELIEF**

12       WHEREFORE, Plaintiffs pray for judgment and relief against Defendant as follows
13   (cause of action number three is excluded from the below to the extent the remedy includes
14   monetary damages):

15       A.    That the Court certify the nationwide Class and the California Class under Rule
16   23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and
17   their attorneys as Class Counsel to represent the members of the Classes;

18       B.    That the Court declare that Defendant's conduct violates the statutes referenced
19   herein;

20       C.    That the Court preliminarily and permanently enjoin Defendant from conducting
21   its business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and
22   misleading labeling and marketing and other violations of law described in this Complaint;

23       D.    That the Court order Defendant to conduct a corrective advertising and
24   information campaign advising consumers that Health-Ade Kombucha does not have the
25   characteristics, uses, benefits, and quality Defendant has claimed;

26       E.    That the Court order Defendant to implement whatever measures are necessary
27   to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading

28

Class Action Complaint
Case No.

advertising, and other violations of law described in this Complaint (excluded from this request is cause of action number three to the extent the remedy includes monetary damages);

F.     That the Court order Defendant to notify each and every individual and/or business who purchased Health-Ade Kombucha of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant (excluded from this request is cause of action number three);

G.     That the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon (excluded from this request is cause of action number three);

H.     That the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint (excluded from this request is cause of action number three);

I.     That the Court award damages to Plaintiffs and the Classes (excluded from this request is cause of action number three);

J.     The common fund doctrine, and/or any other appropriate legal theory (excluded from this request is cause of action number three); and

K.     that the Court grant such other and further relief as may be just and proper (excluded from this request is cause of action number three to the extent the remedy includes monetary damages).

DATED:  March 23, 2018          **BRADLEY/GROMBACHER, LLP**


                                By: /S/  Kiley Lynn Grombacher
                                     Marcus J. Bradley, Esq.
                                     Kiley Lynn Grombacher, Esq.
                                     Attorneys for Plaintiff

-44-

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED:   March 23, 2018                    **BRADLEY/GROMBACHER, LLP**


By: /S/ Kiley Lynn Grombacher
    Marcus J. Bradley, Esq.
    Kiley Lynn Grombacher, Esq.
    Attorneys for Plaintiff

**Class Action Complaint**
**Case No.**